Filed 1/5/23  P. v. Bridges CA2/3
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>THOMAS BRIDGES,<br><br>　　Defendant and Appellant. | B308894<br><br>(Los Angeles County<br>Super. Ct. No. BA240172) |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Remanded for resentencing.

Kathy R. Moreno, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, a jury convicted Thomas Bridges of first degree special circumstance murder and robbery, with gang and firearm enhancements. In 2020, Bridges petitioned for vacation of his murder conviction and resentencing pursuant to Penal Code[1] section 1172.6.[2] After appointing counsel for Bridges and considering briefing from the parties, the trial court denied the petition. We affirmed that order denying the petition. (*People v. Bridges* (Oct. 18, 2021, B308894 [nonpub. opn.].) Bridges appealed. Our California Supreme Court granted review and has now transferred the matter back to us with the direction to vacate our decision and to reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Doing so, we conclude that remand is required.

## BACKGROUND[3]

I.     The offenses, Bridges's conviction, and original appeal

In 1998, Tiasha Croslin was Bridges's girlfriend, and they were living together. Reginald Howard, Jesse Singleton, Amar Mobley, Rollin Denem, Claudell Hatter, and Wardell Joe were all members of the 69 East Coast Crips criminal street gang.

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3]     We derive the background in part from this Division's unpublished opinion in this case, which is in the record, and of which we take judicial notice on our own motion. (Evid. Code, §§ 451, 459.)

2

Bridges was a member of a related gang, the West Covina Neighborhood Crips.

On the morning of November 3, 1998, Bridges, Denem, Hatter, Joe, Singleton, Howard, Mobley, and Croslin met at Hatter's house in Los Angeles. Hatter said he needed money to get a car out of impound, and the group discussed committing a robbery. When the meeting ended, Bridges told Croslin to get into a Buick Regal automobile with Hatter, and she did so. Hatter drove the Buick to the Big Saver Foods Market near Slauson and Compton Avenues in Los Angeles. Croslin understood they were going to commit a robbery. Joe drove to the market in an Oldsmobile Cutlass and waited outside the market. Mobley drove to the market in a Trans-Am automobile and parked nearby.

When they arrived at the market, Croslin and Hatter went inside and Hatter said, " 'This is where we're going to hit.' " Croslin and Hatter made a purchase and then left.

Thereafter Bridges, Howard, Denem and Singleton entered the market. Denem produced a gun, ordered everyone to get on the floor, and fired a shot into the ceiling. Howard and one of the other robbers struggled with the security guard, Juan Hernandez; Howard shot and killed him. One of the robbers took Hernandez's gun.

Cashier Marissa A. saw Hernandez struggling with the robbers, and then heard a shot. She ran to the manager's office, but the manager had locked the door before she could enter. Bridges then forced her, at gunpoint, to empty the contents of two cash registers into a plastic bag.

After the robbery, the entire crime team returned to Hatter's residence. Howard, who appeared jittery and nervous,

paced and repeatedly said, in a scared manner, " 'I killed him, I killed him.' " The robbers argued among themselves, and Bridges and Hatter loudly urged Howard to calm down. Bridges complained that they would have gotten more if Howard had not been " 'so trigger happy.' " The robbers divided the loot obtained, which included money and food stamps. An associate of the 69 East Coast Crips gang, Leonard Jackson, arrived at Hatter's home just as the robbers returned from the crime scene, and they gave him some food stamps obtained in the robbery. When the robbers saw television news reports of the robbery, Bridges and Denem said the police sketches did not look like them, and Denem laughed. Hatter told Singleton to get rid of the Trans Am. After the loot was divided, the perpetrators left the house.

Croslin did not learn Hernandez had been killed until she saw the news on television that night. When Bridges returned home that evening, she confronted him about it. He said, " 'Howard was tussling with the security guard and shot him.' " Bridges explained that Howard's job in the robbery had been to distract the security guard while Bridges and Denem or Singleton got money from the safe in the store's office. Bridges said that Denem had worn a hat and a curly wig as a disguise. Hatter's role had been to drive along 58th and indicate to the others that it was okay to rob the market.

Two days after the robbery Croslin was arrested on a federal bank robbery charge, and Jackson was arrested for violating parole.

The crime went unsolved for two years until Jackson, who was at that point serving a 17-year federal drug term, contacted the United States Attorney and offered to assist in hopes of obtaining a reduction of his term. A detective interviewed

4

Jackson in March 2001, and he identified the participants in the robbery. Several months later, Jackson and Bridges were incarcerated together, and Bridges discussed the Big Saver Foods crimes. Bridges said Hatter and Croslin entered the store first to " 'check the move out[.]' " Bridges and Denem intended to force the manager to open the safe at the back of the store, but the manager locked himself inside a room. Bridges heard a shot, then ran with Denem to the front of the market and saw that Howard and Singleton already had fled. Bridges then took food stamps from the cash register. Howard had been armed with a .45-caliber handgun.

Market employees identified Singleton, Bridges, and Howard as the perpetrators. A man who lived nearby when the crimes occurred had observed the three cars parked near the market and saw four men go inside. He identified Croslin, Hatter, and Joe as the persons he had seen in the Buick Regal and the Oldsmobile Cutlass, respectively.

In May 2001, a detective interviewed Croslin, who was in federal custody in Connecticut. She admitted her role in the Big Saver Foods case and identified the participants. She subsequently pled no contest to voluntary manslaughter and robbery in exchange for a 12-year prison term and her truthful testimony. Both Jackson and Croslin ultimately testified at trial.

The jury convicted Bridges, along with Denem, Hatter, and Joe, of special circumstance first degree murder (§§ 187, subd. (a), 190.2, subd. (a)(17)(A)) and two counts of robbery (§ 211). As to the murder and one of the robbery counts, the jury found true a gang allegation (§ 186.22, subd. (b)(1)), as well as the allegation that a principal personally and intentionally discharged a firearm, proximately causing Hernandez's death (§ 12022.53,

5

subds. (c), (d), (e)(1)).  The court sentenced Bridges to life in prison without the possibility of parole, plus 25 years to life.

In 2006, a different panel of this Division modified Bridges's sentence but otherwise affirmed the judgment.  (*People v. Bridges* (Jan. 30, 2006, B176263) [nonpub. opn.].)

II.    Bridges's 2017 habeas petition

In 2017, after the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) —cases that substantially narrowed and clarified the class of defendants who are major participants who act with reckless indifference to human life during a felony—Bridges filed a petition for writ of habeas corpus in the trial court, apparently asserting the evidence was insufficient to support the special circumstance finding because he was not a major participant in the robbery who acted with reckless indifference to human life, under *Banks* and *Clark*.  The trial court considered the factors articulated by *Banks* and *Clark*, and the facts as set forth in this Division's opinion in codefendant Howard's direct appeal (*People v. Howard* (June 1, 2007, B186175) [nonpub. opn.]) and concluded that Bridges was a major participant in the robberies who acted with reckless indifference to human life.  Accordingly, it denied the petition.

III.    The section 1172.6 petition

In July 2020, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Bridges filed a petition for vacation of his murder conviction and resentencing.  Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he was not the

6

actual killer; he did not, with the intent to kill, aid and abet the actual killer, nor was he a major participant in the offense who acted with reckless indifference to human life; the victim was not a peace officer; and he could not now be convicted of murder in light of changes to section 189 effectuated by Senate Bill 1437. He also checked a box requesting that counsel be appointed for him. In a five-page document appended to the petition, Bridges averred that there was no evidence he had acted with malice aforethought.

In support, he attached this court's opinion in *People v. Howard*, which discussed evidence that Bridges told Jackson the killing was " 'messed up' " and was not supposed to have happened. He also attached the trial court's 2017 order denying his *Banks/Clark* habeas petition, and the trial court's order denying an earlier habeas petition that had asserted ineffective assistance of counsel and instructional error. As relevant here, that order observed that Bridges was tried on a felony murder theory, not a natural and probable consequences theory.

The trial court appointed counsel for Bridges.

The People filed an opposition to the petition, primarily arguing that the jury's special circumstance finding rendered Bridges ineligible for section 1172.6 relief. The People attached this Division's opinion in *People v. Bridges*, *supra*, B176263, and the trial court's 2017 order denying the 2017 *Banks/Clark* habeas petition as exhibits.

Bridges, through counsel, filed a responsive brief, arguing that the evidence did not show he was a major participant who acted with reckless indifference. He claimed he was not actually present at the scene, the planned robbery was not supposed to involve violence but went awry, the eyewitness identifications of

7

him were inconsistent, and a special circumstance finding rendered before *Banks* and *Clark* does not preclude section 1172.6 relief.

On October 8, 2020, after considering the petition, the parties' briefs, the "entire court file," and the opinion in *People v. Bridges*, *supra*, B176263, the trial court denied the section 1172.6 petition. It reasoned: "Among other crimes, petitioner was convicted of first degree murder. The sole basis of the murder conviction was felony murder as an aider and abettor. A felony-murder special circumstance was found true. In instructing the jury, the court instructed re former CALJIC [No.] 8.80.1. The language in the instruction was pursuant to Penal Code section 190.2(c) and (d). Thus, by their finding, the jury found beyond a reasonable doubt that petitioner was, at the least, a major participant in the underlying felony who acted with reckless indifference to human life. This has been found sufficient to summarily deny a petition under Penal Code section [1172.6]; i.e., the petitioner cannot challenge the sufficiency of evidence under Penal Code section [1172.6]. [Citations]." "The fact that the case was tried prior to [*Banks* and *Clark*] does not entitle petitioner to relief [citations]." The court cited then-recent authority so holding and acknowledged the existence of contrary appellate authority. It continued: "Although the court is of the opinion that the [former line of authority is] better reasoned, it is noted that on March 1, 2017, the court denied petitioner's petition for writ of habeas corpus under *Banks/Clark* grounds. . . . [¶] As a matter of law petitioner is not entitled to relief."

Bridges appealed the order denying his petition, and this Division affirmed the order, concluding that the jury's true finding on the special circumstance allegation precluded section

8

1172.6 relief as a matter of law.  (*People v. Bridges*, *supra*, B308894.)

Thereafter, our California Supreme Court issued *Strong*, *supra*, 13 Cal.5th 698, which further clarified the scope of section 1172.6.  Specifically, *Strong* held that a special circumstance finding predating *Banks* and *Clark* does not preclude eligibility for resentencing under section 1172.6.  As we now explain and as the People concede, remand is now required.

## DISCUSSION

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)  As relevant here, Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).  (*Gentile*, at p. 842.)

Senate Bill 1437 also added section 1172.6, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder theory may petition for vacation of their convictions and resentencing.  A defendant is eligible for relief under section 1172.6 if the defendant meets three conditions:  (1) the defendant must have been charged with murder under a

theory of felony murder, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1172.6, subd. (a).) If a petitioner makes a prima facie showing of entitlement to relief, the trial court shall issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3)).

As noted, Bridges's jury found true the special circumstance allegation that the murder was committed during a robbery. (§ 190.2, subd. (a)(17)(A).) In denying the section 1172.6 petition, the trial court observed that Bridges's jury had been instructed with CALJIC No. 8.80.1, which provides in pertinent part: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider or abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the crime" which resulted in the victim's death.

Bridges has challenged the trial court's order denying his petition on the ground it erred by finding him ineligible for

10

resentencing based on the jury's special circumstance findings that predated *Banks* and *Clark*, which, as we have said, substantially clarified what it means for an aider and abettor defendant like Bridges to be a major participant in a crime who acted with a reckless indifference to human life for the purposes of the special circumstance statute, section 190.2, subdivision (d). *Strong*, *supra*, 13 Cal.5th at pages 719 to 720, held that a pre-*Banks* and *Clark* finding that the defendant was a major participant who acted with reckless indifference to human life during a felony does not preclude the defendant from making a prima facie case for relief under section 1172.6, even if the trial evidence was sufficient to support the findings under *Banks* and *Clark*.  *Strong*, at page 720, footnote five, further noted that "section 1172.6 relief is not necessarily confined to those who might have been able to obtain relief through sufficiency-of-the-evidence claims raised on direct appeal or through functionally similar claims raised on habeas corpus."  The People accordingly concede that the denial of Bridges's habeas corpus petition does not preclude relief and that *Strong* requires remand.

We agree that, under *Strong*, Bridges is entitled to appointment of counsel and to an evidentiary hearing under section 1172.6, subdivision (d)(3).

11

**DISPOSITION**

The order denying Thomas Bridges's petition is reversed, and the matter is remanded with the direction to the trial court to appoint counsel for Bridges, to issue an order to show cause, and to conduct an evidentiary hearing in accordance with Penal Code section 1172.6, subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

RICHARDSON (ANNE K.), J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.